UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZINA-CHANEL IVY,

                                    Plaintiff,

            v.

WELLS FARGO BANK, N.A.,

                                    Defendant.

CASE NO. 2:19-cv-01046-RAJ-BAT

**REPORT AND RECOMMENDATION**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves to dismiss Plaintiff's complaint with prejudice and without leave to amend, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 7. The undersigned recommends that the motion to dismiss be granted as Plaintiff's Complaint fails to allege a cognizable claim against Wells Fargo.

The motion to dismiss, which was originally noted for August 2, 2019, was re-noted by the Clerk for August 8, 2019. The Clerk sent notice of the new noting date to Plaintiff via United States mail on July 16, 2019. On August 20, 2019, the parties filed a joint status report. Dkt. 13. On August 21, 2019, the case was referred to the undersigned magistrate judge, pursuant to Local Rule MJR 6 and General Order 02−19.

Plaintiff has filed nothing in response to Wells Fargo's motion to dismiss. Pursuant to LCR 7(b)(2), such failure may be considered by the Court as an admission that Wells Fargo's motion has merit.

REPORT AND RECOMMENDATION - 1

1

## REQUEST FOR JUDICIAL NOTICE

2    Pursuant to Fed. R. Civ. P. 201(b)(2), Wells Fargo requests judicial notice of the

3    following documents, true and correct copies of which were submitted in support of its motion to

4    dismiss:

5    1.    Note dated June 23, 2016, executed by Zina C. Ivy. Dkt. 8, Ex. 1.

6    2.    Deed of Trust dated June 23, 2016, executed by Zina C. Ivy, recorded
          June 29, 2016 in the official records of King County, Washington,
7         Recording No. 20160629001170. *Id.*, Ex. 2.

8    3.    Assignment of Deed of Trust dated January 16, 2019, recorded January
          16, 2019 in the official records of King County, Washington, Recording
9         No. 20190116000709. *Id.*, Ex. 3.

10   4.    Notice of Default dated April 22, 2019. *Id.*, Ex. 4.

11   5.    Appointment of Successor Trustee dated April 12, 2019, recorded April
          15, 2019 in the official records of King County, Washington, Recording
12        No. 20190415001609. *Id.*, Ex. 5.

13   6.    Notice of Trustee Sale dated May 29, 2019, recorded May 29, 2019 in the
          official records of King County, Washington, Recording No.
14        20190529001219. *Id.*, Ex. 6.

15   7.    Notice of Discontinuance of Trustee's Sale dated June 26, 2019, recorded
          June 28, 2019 in the official records of King County, Washington,
16        Recording No. 20190628000039. *Id.*, Ex. 7.

17   Generally, a district court may not consider material beyond the complaint in ruling on a

18   Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

19   However, there are limited exceptions to this rule: (1) a court may consider material properly

20   submitted as a part of the complaint; (2) a court may consider documents not physically attached

21   to the pleading if the contents are alleged in the complaint and no party questions the

22   authenticity; and (3) under Federal Rule of Evidence 201, a court may take judicial notice

23   matters of public record. *Id.* at 688-89. Rule 201 provides, in pertinent part, "[a] judicially

REPORT AND RECOMMENDATION - 2

noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "A trial court may presume that public records are authentic and trustworthy," *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999), and thus fall within the purview of Rule 201, *see also Allshouse v. Caliber Home Loans, Inc.*, No. CV1401287DMGJCX, 2014 WL 12594210, at *3 (C.D. Cal. Oct. 29, 2014) ("Courts routinely take judicial notice of assignments of deed of trust and similar recorded documents" in motions to dismiss.).

Exhibit 1 is Plaintiff's note, which forms the basis of Plaintiff's claims and the authenticity of which is not in question. Exhibits 2, 3, 5, 6, and 7 are true and correct copies of official records of the King County Recorder's Office, whose authenticity is capable of accurate and ready determination. *See* Fed. R. Evid. 201(b); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992). Exhibit 4 is the document referenced in the Notice of Trustee Sale (Ex. 6), a document which Plaintiff received in conjunction with the foreclosure proceedings of her Property, the authenticity of which is not disputable.

Based on the foregoing, the Court takes judicial notice of Exhibits 1 through 7.

## FACTUAL BACKGROUND AND SUMMARY OF CLAIMS

On June 23, 2016, Plaintiff Zina C. Ivy borrowed $254,950.00 from Bank 34, A Federal Bank. The loan was evidenced by a promissory note and secured by a deed of trust encumbering 12847 SE 161st Street, Renton, WA 98058 (the "Property"). Dkt. 8, Exs.1, 2.

On or about January 16, 2019, Bank 34 assigned all right, title, interest, lien and estate in and to the Property under its deed of trust to Wells Fargo Bank, N.A. by executing an

Assignment of Deed of Trust, recorded in Official Records of the Auditor of King County, Washington under Instrument No. 20190116000709. *Id.*, Ex. 3.

The loan fell into default when Plaintiff failed to make her monthly installment payments on November 1, 2018, and each month thereafter. *Id.*, Ex. 4. As a result of Plaintiff's default, Wells Fargo appointed Quality Loan Service Corporation of Washington ("QLS") as successor trustee by an Appointment of Successor Trustee. *Id.*, Ex. 5. Thereafter QLS recorded a Notice of Trustee's Sale (the "NOTS") in the Official Records of the Auditor of King County, Washington under Instrument No. 20190529001219. *Id.*, Ex. 6. QLS recorded a Notice of Discontinuance of Trustee's Sale in Official Records of the Auditor of King County, Washington on June 28, 2019, under Instrument No. 20190628000039. *Id.*, Ex. 7. The sale previously set for October 4, 2019, (*id.*, Ex. 6, p. 2 ¶V.) has never been held, and no trustee's sale is actively scheduled.

Plaintiff acknowledges her debt to Wells Fargo, but alleges the debt was paid off when she tendered a "Credit Agreement Payoff Security Instrument" ("Credit Agreement") to Wells Fargo, and Wells Fargo "defaulted and breached new Credit Agreement Terms and Conditions." Dkt. 1-3, pp. 3-8; Dkt. 1-1, Exhibit B, pp. 26-27.[1] The new "terms and conditions" included nullifying and voiding Plaintiff's mortgage and replacing it with a one-time, final payoff of $1,825.00, which had to be picked up at Plaintiff's home. *Id.*; *see also*, Dkt. 1-1, Ex. D, p. 35 (Check purporting to be Plaintiff's final payment "Never Collected"). The Credit Agreement is entitled "Certified Negotiable Security No. 000016801" and was purportedly issued from the City of Renton on March 13, 2019. *Id.* The document is signed by Plaintiff, includes the words "Medallion Securitized Security Signature Stamp," "This is a Bank Medallion Verified Security signed in blue ink!!," and includes the handwriting "Received + Accepted," with a signature

---

[1] CM/ECF page numbering.

REPORT AND RECOMMENDATION - 4

1    above the typed name and address of the Rainier Avenue branch of the Wells Fargo Bank. *Id.*, p.

2    26. On what appears to be the second page of this instrument is the signature of "Zina Chanel

3    Ivy: (father, son, holy ghost)." *Id.*, p. 27. Also attached are incomplete and unrecorded UCC

4    Financing Statements, at least one of which purports to have been filed by the Texas Secretary of

5    State. *Id.*, pp. 28-31.

6        Plaintiff alleges that Wells Fargo refused to honor her Credit Agreement and in doing so,

7    committed fraud (Dkt. 1-3, p. 5) and RICO Act violations (*id.*, p. 5), lacks standing to foreclose

8    or enforce the note and deed of trust (*id.*, p. 6), and committed a number of other acts labeled as

9    "Financial Discrimination" and violations of the "Tender Act, Security Act, FCRA, FCDPA

10    [sic], Civil Rights Act, and Title 12 Banking Laws." *Id.*, p. 7.

11                          **MOTION TO DISMISS STANDARD**

12        In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept

13    the factual allegations in the Complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197,

14    167 L.Ed.2d 1081 (2007), and construe the pleading in the light most favorable to Plaintiff.

15    *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). To avoid dismissal

16    for failure to state a claim, a complaint must contain more than "a formulaic recitation of the

17    elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

18    relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct.

19    1955, 167 L.Ed.2d 929 (2007). Where, however, the plaintiffs fail to "nudge[] [their] claims

20    across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550

21    U.S. at 570.

22        The court must construe the pleadings of a pro se litigant liberally. *Garcia v. Experian*,

23    No. C16-0250JLR, 2016 WL 5395547, at * 3 (W.D. Wash. Sep. 26, 2016) (citing *Bretz v.*

REPORT AND RECOMMENDATION - 5

1    *Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, that liberal interpretation may not

2    supply essential elements of a claim that are not pleaded. *Garcia*, *supra* (*citing Pena v. Gardner*,

3    976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268

4    (9th Cir. 1982)).

**DISCUSSION**

5

6    **A.    Quiet Title Action**

7            In a "Verified Affidavit of Injury," attached as Ex. A to her complaint, Plaintiff makes

8    clear that she seeks to remove any lien or encumbrance Wells Fargo may hold on the Property.

9    Dkt. 1-1, p. 13, ¶12. Her reasoning is she satisfied her outstanding obligation by tendering the

10   Credit Agreement. Dkt. 1-1, Ex. B, pp. 26-27. Plaintiff claims the Credit Agreement is valid

11   because she herself is a "registered, certified Private Banker, Creditor and National Bank per

12   legal description and is, in [her] opinion, legally able to sign" it. Dkt. 1-1, p. 8. Plaintiff further

13   claims that Wells Fargo "accepted" the Credit Agreement as evidenced by a signature on the face

14   of the document titled "received & accepted," purportedly by an individual in the Rainier branch

15   of the Wells Fargo Bank. *Id.*, Ex. B. Plaintiff further claims she is entitled to compensation in the

16   amount of $5 million. *Id.*

17           A plaintiff seeking to quiet title against a purported lender or other holder of a debt

18   secured by a deed of trust must allege satisfaction of the secured obligation. *Walker v. Quality*

19   *Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 321, 308 P.3d 716, 728 (2013), *abrogated in part*

20   *on other grounds by Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 334 P.3d 529

21   (2014). The logic behind this rule of law is simple: the deed of trust allows a Lender to invoke

22   the power of sale when the borrower defaults on its loan obligations. The borrower's right to

23   reside in the property is contingent upon the borrower's satisfaction of the loan obligations.

REPORT AND RECOMMENDATION - 6

1    "Under these circumstances, it would be unreasonable to allow a borrower to bring an action to

2    quiet title against its lender without alleging satisfaction of those loan obligations. Plaintiffs have

3    not provided any rationale that would support an alternate rule." *Id.* (citing *Evans v. BAC Home

4    *Loan Servicing LP*, No. C10-0656, 2010 WL 5138394 (W.D. Wash. Dec. 10, 2010).

5         As evidenced by the documents provided by Wells Fargo, and of which this Court is

6    entitled to take judicial notice, Plaintiff has never satisfied the outstanding obligation owed to

7    Wells Fargo. Dkt. 8, Exs. 4, 6. The obligation Plaintiff owes Wells Fargo is contained within her

8    Note and Deed of Trust (*id.*, Exs. 1, 2) – namely, her promise to pay "U.S. $254,950 plus interest

9    to the order of the Lender." *Id.*, Ex. 1, ¶1. Plaintiff further agreed that she will make "all

10   payments under this Note in the form of cash, check or money order." *Id.* Nowhere within the

11   Note does the Lender or its successors and assigns permit Plaintiff to tender payment in the form

12   of the Credit Agreement, or any other form of credit, to satisfy her obligation under the Note.

13   Cash, check or money order is the only acceptable form of payment under the terms of the Note.

14   *Id.*, Ex. 1.

15        Even accepting that someone in the Rainier Branch of the Wells Fargo Bank signed for

16   the document, there is no evidence that Wells Fargo Bank agreed to accept Plaintiff's Credit

17   Agreement in lieu of payments under its Note. For a contract to exist, there must be mutual

18   assent, which "generally takes the form of offer and acceptance." *Yakima Cty. (W. Valley) Fire

19   *Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 256 (Wash. 1993). A contract is not valid

20   until an offer has been accepted. *A.A.B. Elec., Inc. v. Stevenson Pub. Sch. Dist. No. 303*, 491 P.2d

21   684, 686 (Wash. Ct. App. 1971). Moreover, "[f]ailure to reject an offer is not equivalent to assent

22   of that contract since silence is acceptance only where there is a duty to speak." *Saluteen-

23   *Maschersky v. Countrywide Funding Corp.*, 22 P.3d 804, 808 (Wash. Ct. App. 2001). Finally, "a

REPORT AND RECOMMENDATION - 7

duty to speak arises only out of a trust or fiduciary relationship between the parties." *Lincoln v. Keene*, 316 P.2d 899, 901 (Wash. 1957); *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 39 (Wash. 2012) (Under Washington law, trustees do not have a fiduciary duty to the grantor or other persons having an interest in the property.); *Miller v. U.S. Bank of Wash., N.A.*, 865 P.2d 536, 543 (Wash. Ct. App. 1994), as corrected (Feb. 22, 1994) ("The general rule in Washington is that a lender is not a fiduciary of its borrower.").

Because Plaintiff's obligation has never been satisfied and remains outstanding, she has no grounds to an order quieting title to the Property in her name. *Id.*, Exs. 4 and 6. Accordingly and to the extent Plaintiff seeks an order for quiet title on the Property, the undersigned recommends that the claim be dismissed with prejudice and without leave to amend.

**B.    Foreclosure by Wells Fargo as Holder of the Note**

Plaintiff alleges that Wells Fargo is no longer the Holder or owner of her mortgage, but is just a servicer or debt collector. Dkt. 1-3, p. 6.

**1.    Wells Fargo is the Holder of the Note and Beneficiary of the Deed of Trust**

Plaintiff's deed of trust named "Bank 34" as the "Lender." Dkt. 8, Ex. 2. The note was payable to "Bank 34, A Federal Bank." *Id.*, Ex. 1. The Note is specifically endorsed to Wells Fargo Bank, N.A. by Bank 34, a Federal Bank. *Id.*, Ex. 1, p. 4. On or about January 16, 2019, Bank 34 assigned all right, title, interest lien and estate in and to the Property under its deed of trust to Wells Fargo Bank, N.A. *Id.*, Ex. 3. Wells Fargo Bank, N.A. was at all relevant times, the holder of the note (*id.*, Ex. 4, pp. 2, 9) and beneficiary of the deed of trust. *Id.*, Exs. 2, 3, 4, 6. The deed of trust defines the beneficiary of this security instrument as Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Lender and Lender's successors and

1    assigns (*id.*, Ex. 2, p. 4), and RCW 61.24.005(2) defines the beneficiary as the holder of the

2    promissory note.

3         The holder of a note is the beneficiary of the deed of trust. *Bain*, 175 Wn.2d 83, 285 P.3d

4    34. In *Bain*, MERS was the named beneficiary and nominee for the lender in the deed of trust,

5    and it appointed a successor trustee. *Id.*, 175 Wn.2d at 89–90. The Court was asked to answer a

6    certified question from the district court as to whether MERS was the lawful beneficiary of the

7    deed of trust, if it never held the note. The Court held that under the plain language of the Deeds

8    of Trust Act, the beneficiary of the deed of trust is the holder of the obligation. *Id*. at 98–99. The

9    holder, in turn, is the party in possession of the instrument payable to bearer or in possession of

10   the instrument made payable to an identified party. *Id*. at 104. *See also*, *Brown v. Dep't of*

11   *Commerce*, 184 Wn.2d 509, 523, 524, 359 P.3d 771 (2015) (the clear legislative purpose of the

12   Deeds of Trust Act was to ensure the party with authority to enforce and modify the promissory

13   note is the party who forecloses).

14        The undisputed and judicially noticed records reflect that here, Wells Fargo Bank, N.A.

15   was at all relevant times, the holder of the note (Dkt. 8, Ex. 4, pp. 2, 9; Ex. 6) and beneficiary of

16   the deed of trust. *Id*., Exs. 2, 3, 4, 6. The Note is specifically endorsed from Bank 34, a Federal

17   Bank to Wells Fargo Bank, N.A. *Id.*, Ex. 1, p. 4. As lender and beneficiary, Wells Fargo validly

18   executed an appointment of successor trustee in 2019. Thus, Wells Fargo was authorized to

19   enforce the promissory note by appointing a successor trustee of the deed of trust and

20   commencing foreclosure.

21        Based upon *Bain* and *Brown*, *supra*, and the foregoing, it is recommended that Plaintiff's

22   claims based on the allegation that Wells Fargo has no authority to foreclose, be dismissed with

23   prejudice and without leave to amend.

REPORT AND RECOMMENDATION - 9

1

2.    **Plaintiff Lacks Standing to Bring Claims Based on Securitization**

2

Plaintiff broadly alleges that Wells Fargo "lent money and the original Mortgage Debt

3

Lien Contract Security money into a Trust making the TRUST Investors the true Holder in Due

4

Course." Dkt. 1-3, pp. 3, 4. Even if these allegations were true, Plaintiff lacks standing to bring

5

such claims.

6

Washington courts have repeatedly rejected claims based on securitization allegations.

7

Securitization does not affect the loan terms between a borrower and lender, nor does it affect a

8

borrower's obligation to pay the promissory note. "[T]he borrower's loan contract (the Note and

9

Trust Deed…) is distinct and separate from any securities transaction in the "secondary market"

10

encompassing assignment of the contract." *Velasco v. Discover Mortg. Co.*, No. 4562-7-II, 2015

11

WL 1753677, at *11 (Wash. Ct. App. Apr. 14, 2015) (unpublished)[2] (quoting *In re Nordeen*, 495

12

B.R. 468, 479-80 (B.A.P. 9th Cir. 2013) (citing cases upholding the dismissal of claims based on

13

the securitization theory)). Numerous other courts have rejected the theory that securitization

14

creates a cause of action for borrowers. *See, e.g., Young v. Quality Loan Serv. Corp. of Wash.*,

15

2015 WL 12559901, *1 (W.D. WA July 7, 2015) ("To the extent plaintiff intends to argue that

16

the securitization of his mortgage nullified the underlying debt obligation, that argument has

17

been routinely rejected in this district.") (citing *Andrews v. Countrywide Bank, N.A.*, 95 F. Supp.

18

3d 1298, 2015 WL 1487093, at *2 (W.D. WA 2015), *McCarty v. U.S. Bank, N.A.*, 2012 WL

19

1751791 (W.D.WA May 16, 2012) ("Plaintiffs offer no legal support for their primary claim:

20

that the securitization of a promissory note voids the instrument."); *Cuddeback v. Bear Stearns*

21

*Residential Mortg. Corp.*, 2013 WL 5692846, *3 (W.D. Wash. Sept. 10, 2013) (dismissing

22

23

---

[2] "[W]e may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 10

1    claims for wrongful foreclosure, fraud, quiet title and declaratory relief and citing to *McCarty*).

2    *See also*, *Bain*, 175 Wn.2d at 96 (internal citations omitted) (acknowledging the legality and

3    benefit of securitizing loans. *See also*, *Borowski v. BNC Mortgage, Inc.*, C12-5867 RJB, 2013

4    WL 4522253, at *5 (W.D. WA Aug. 27, 2013) ("there is ample authority that borrowers, as third

5    parties to the assignment of their mortgage (and securitization process), cannot mount a

6    challenge to the chain of assignments unless a borrower has a genuine claim that they are at risk

7    of paying the same debt twice if the assignment stands").

8          Based on the foregoing, the undersigned recommends that any claims based on an

9    allegation that the securitization of Plaintiff's loan rendered it void, be dismissed with prejudice

10   and without leave to amend.

11         **3.    "Show Me the Note" Claims**

12         In a claim entitled "fraud in the factum upon the court," Plaintiff alleges that Wells Fargo

13   had a counterfeit copy of the mortgage filed into county records, and requests that Wells Fargo

14   produce the original debt document. Dkt. 3-1, p. 5.

15         The Washington Deeds of Trust Act requires the note holder and beneficiary to provide

16   proof to the trustee – not to the borrower – that it is the holder of any promissory note or other

17   obligation secured by the deed of trust. RCW 61.24.030(7)(a). Arguments that a note holder must

18   provide proof to a borrower prior to commencing foreclosure, or "show me the note" arguments,

19   have been routinely rejected in this district. *See*, *e.g.*, *Canzoni v. Countrywide Bank*, 2016 WL

20   3251403, *7 (W.D. Wash. June 13, 2016), *Mikhay v. Bank of Am., NA.*, 2011 WL 167064, *2

21   (W.D. Wash. 2011); *Wright v. Accredited Home Lenders*, 2011 WL 39027, *2 (W.D. Wash.

22   2011); *Pelzel v. First Saving Bank Northwest*, 2010 WL 3814285, *2 (W.D. Wash. 2010); *Wallis

23   v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1200 (W.D. Wash. 2010).

1        Plaintiff alleges that Wells Fargo has failed to provide proof of any debt, which she

2    claims is in the form of a "blue ink signed Mortgage Promissory NOTE and the County

3    Recorded Mortgage Debt Lien Contract Security." Dkt. 1-3, pp. 3, 5, 10 ¶6, 11 ¶13. Because

4    these types of "show me the note" allegations have been routinely rejected in this district, the

5    undersigned recommends that Wells Fargo's motion to dismiss any claims, to the extent they

6    rely on the "show me the note" theory, be dismissed with prejudice and without leave to amend.

7        **4.**    **Fraud Claim**

8        Plaintiff alleges that Wells Fargo filed a "counterfeit copy of the Mortgage Debt Lien

9    Contract Security. Dkt. 1-3, p. 5. Plaintiff further alleges that Wells Fargo has never verified any

10   debt and comes "with unclean hands with the intentions of fraud in the factum upon this Court of

11   Record" by avoiding the terms of the Credit Agreement, which Plaintiff contends was

12   "[r]eceived in-hand and … accepted by bank agent's blue inked signature." *Id.*

13        To maintain a cause of action for fraud, a plaintiff must prove all nine elements of fraud

14   by clear, cogent, and convincing evidence: (1) a representation of existing fact, (2) its

15   materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that

16   it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the

17   person to whom the representation is addressed, (7) the latter's reliance on the truth of the

18   representation, (8) the right to rely upon it, and (9) consequent damage. *Elcon Constr., Inc. v. E.*

19   *Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965, 970 (2012) (citing *Williams v. Joslin*, 65

20   Wn.2d 696, 697, 399 P.2d 308 (1965) (citing *Michielli v. U.S. Mortg. Co.*, 58 Wn.2d 221, 361

21   P.2d 758 (1961)). The party asserting fraud has the burden of providing sufficient evidence of all

22   nine elements of fraud. *Alejandre v. Bull*, 159 Wn.2d 674, 690, 153 P.3d 864, 872 (2007).

23

REPORT AND RECOMMENDATION - 12

In addition, Fed. R. Civ. P. 9(b) requires a plaintiff to make "particularized allegations of the circumstances constituting fraud." *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011). To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false and misleading about a statement, and why it is false. *Id*. at 1548. This particularity requirement necessarily demands that the plaintiffs plead certain "evidentiary" facts: "time, place, persons, statements made, explanation of why or how such statements are false or misleading." *Id*., at 1547-1548 n.7.

Plaintiff's fraud allegations fail to satisfy all of the above requirements. Plaintiff alleges only that she believes that a "counterfeit copy of the Mortgage Debt Lien Contract Security" was "filed into county records." Dkt. 1-3, p. 5. Plaintiff does not explain or offer any evidentiary facts to establish what makes the recorded deed of trust (Dkt. 8, Ex. 2) a counterfeit, how Wells Fargo was somehow aware that it was "false," Plaintiff's reliance upon it, or damages stemming from that reliance. Additionally, Plaintiff fails to provide evidentiary facts explaining how Wells Fargo's failure to accept the "Credit Agreement" in satisfaction of her financial obligations, constitutes fraud.

Based on the foregoing, the undersigned recommends that Plaintiff's fraud claims be dismissed with prejudice and without leave to amend as it is clear no factual amendments can cure the deficiencies in her fraud claims – which are based only on a "show me the note" theory and acceptance of the Credit Agreement as satisfaction of Plaintiff's financial obligations.

REPORT AND RECOMMENDATION - 13

1    **C.    RICO Violation**

2         Plaintiff alleges that Wells Fargo has been engaged in conspiracy and racketeering "as a

3    Street Gang since the 1994 Securitization of mortgages." She claims generally that Wells Fargo

4    has foreclosed on thousands of homes and real estate and collected on presumed debts without

5    being the "owner or holder in due course." Dkt. 1-3, p. 5.

6         To bring a claim for a RICO violation, a plaintiff must establish: (1) conduct (2) of an

7    enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5)

8    causing injury to plaintiff's "business or property." *Living Designs, Inc. v. E.I. DuPont de*

9    *Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506,

10   510 (9th Cir. 1996)) (citing 18 U.S.C. §§ 1964(c), 1962(c)). To establish liability under §

11   1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a "person"

12   and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Id.*

13   (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S. Ct. 2087, 150 L. Ed.

14   2d 198 (2001); *see also Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984)). Under 18 U.S.C.

15   § 1964(c), civil RICO plaintiffs must demonstrate causation, specifically that they were injured

16   "by reason of" the alleged racketeering activity of the defendant. *Living Designs*, 431 F.3d at

17   362-63 (citing 18 U.S.C. § 1964(c)). The burden is plaintiff's to establish causation, specifically

18   that they were injured by reason of the alleged racketeering activity of the defendant. *Id.*

19        Plaintiff fails to provide factual allegations to support each requisite element of a RICO

20   cause of action. Plaintiff does not allege any predicate acts and has not made any specific factual

21   allegations demonstrating that Wells Fargo acted in concert with any other parties to cause any

22   injury to her Property. Moreover, the only conceivable harm the Plaintiff could allege is the

23   foreclosure sale of her home, which has not occurred.

REPORT AND RECOMMENDATION - 14

1   Because Plaintiff cannot provide any facts to substantiate any of the required elements

2   and cannot establish the necessary element of causation, it is recommended that Plaintiff's RICO

3   claims be dismissed with prejudice and without leave to amend.

4   **D.    Financial Discrimination, Fair Credit Reporting Act and Fair Debt Collection
        Practices Act**

5

6   Plaintiff's final cause of action is a "catch-all" titled "Financial Discrimination." Plaintiff

7   alleges that Wells Fargo committed financial discrimination by refusing to recognize her Credit

    Agreement as money. "Financial Discrimination" is not a cause of action that exists under the

8   laws of the State of Washington, or under federal law. Instead, Plaintiff claims are based upon a

9   "show me the note" theory, requiring "verification" and "positive evidence" of her signature on

10  the Note and Deed of Trust in order for Wells Fargo to enforce the obligation Plaintiff owes – a

11  theory which has already been discussed and rejected.

12  Plaintiff then lists several other bases for this final cause of action, which are in turn,

13  based on conclusory allegations and on theories that have previously been rejected.

14  **1.    Fair Credit Reporting Act ("FCRA")**

15  To maintain a cause of action for a violation of the Fair Credit Reporting Act, a plaintiff

16  must allege facts supporting the following elements:

17

18      (i) the plaintiff's credit report contains inaccurate or incomplete information, *see*
        15 U.S.C. Section 1681i(a)(1); (ii) the plaintiff notified the consumer reporting
        agency directly of the inaccurate or incomplete information, *see id.*; (iii) the
19      plaintiff's dispute is not frivolous or irrelevant, *see* 15 U.S.C, Section 1681i(a)(3);
        and (iv) the consumer reporting agency failed to respond to the plaintiff's dispute
20      with a reasonable reinvestigation, *see* 15 U.S.C. Section 1681i(a)(1), (2), (4), and
        (6).

21

22  *Garcia v. Experian*, No. C16-0250JLR, 2016 WL 5395547, at *3 (W.D. Wash. Sep. 26, 2016)

23  (citing *Bowers v. Experian Info. Sols., Inc.*, No. CIVIL 08-1436-AC, 2009 WL 2136632, at *4

REPORT AND RECOMMENDATION - 15

1    (D. Or. July 15, 2009) (listing the "required elements of a claim alleging violation [sic] 15 U.S.C.

2    § 1681i").

3      Plaintiff's complaint is devoid of any facts to support such a claim or to give Wells Fargo

4    fair notice of her claim. *See Conley*, 355 U.S. at 47. Plaintiff makes no mention of her credit

5    report or a purported reporting error. Plaintiff's allegations are instead based upon Wells Fargo's

6    failure to accept her Credit Agreement as legal tender and its failure to "show her the note" to

7    provide "proof or verification" that Wells Fargo is entitled to enforce it.

8      As previously discussed, claims based on a "show me the note" theory have been roundly

9    rejected by this district. Moreover, even assuming that Plaintiff's Credit Agreement is not a

10   manufactured document, the terms of Plaintiff's Note do not obligate Wells Fargo to accept such

11   an instrument in payment of Plaintiff's obligation to Wells Fargo. Plaintiff's Note requires that

12   she make her payments in the form of "cash, check or money order." Dkt. 8, Ex. 1, p. 1. The

13   Credit Agreement is neither legal tender nor cash, check or money order.

14     Plaintiff has not pleaded facts sufficient to support all elements required to bring a cause

15   of action for a violation of the FCRA nor can she allege facts sufficient to support such a claim.

16   Accordingly, it is recommended that Wells Fargo's motion to dismiss be granted and that

17   Plaintiff's FCRA claims be dismissed with prejudice and without leave to amend.

18     **2.**  **Fair Debt Collection Practices Act ("FDCPA")**

19     Plaintiff alleges that Wells Fargo is just a servicer or debt collector. Dkt. 1-3, p. 6. The

20   FDCPA defines "debt collector" as:

21      Any person who uses any instrumentality of interstate commerce or the mails in
        any business the principal purpose of which is the collection of any debts, or who

22      regularly collects or attempts to collect, directly or indirectly, debts owed or due
        or asserted to be owed or due another.

23

REPORT AND RECOMMENDATION - 16

1    15 U.S.C. § 1692a(6); *see also Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir.

2    2013). Thus, to adequately allege that Wells Fargo is a "debt collector," Plaintiff must allege

3    sufficient facts from which the court can reasonably infer that (1) Wells Fargo's "principal

4    purpose" is debt collection, or (2) Wells Fargo "regularly collects debts owed to someone other

5    than [Wells Fargo]." *Id*. at 1209.

6         Plaintiff does not adequately allege that Wells Fargo is a debt collector. Instead, she

7    argues that Wells Fargo is not the holder of the note and therefore, is merely a debt collector. As

8    discussed above, Plaintiff's allegation that Wells Fargo is not the holder of the note is without

9    merit. Plaintiff's allegation that "Wells Fargo is a debt collector" is a legal conclusion that the

10   court need not accept as true. *See Iqbal*, 556 U.S. at 678.

11        In addition, the FDCPA applies to foreclosure activities only through the limited

12   provisions of Section 1692f(6). *See Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 990 (9th

13   Cir. 2017) ("[W]here an entity is engaged solely in the enforcement of a security interest and not

14   in debt collection ... it is subject only to § 1692f(6) rather than the full scope of the FDCPA").

15        Section 1692f(6) prohibits, in pertinent part, the "[t]aking or threatening to take any

16   nonjudicial action to effect dispossession or disablement of property if ... there is no present right

17   to possession of the property claimed as collateral through an enforceable security interest." 15

18   U.S.C. § 1692f(6)(A); *see Ho*, 840 F.3d at 622. Plaintiff fails to allege facts that bring Wells

19   Fargo's foreclosure action within the narrow provisions of Section 1692f(6). Specifically,

20   Plaintiff fails to allege facts from which the court can reasonably infer that Wells Fargo did not

21   have a present right to possession of the property at issue. The judicially noticed documents, on

22   their face, demonstrate that Wells Fargo has a present right to possession of the property claimed

23   as collateral through an enforceable security interest. Dkt. 8, Exs. 1-3. Consequently, the court

cannot reasonably infer Wells Fargo's foreclosure actions to be within the provisions of Section 1692f(6), and it is recommended that Plaintiff's FDCPA claim be dismissed on this basis as well.

Plaintiff's entire Complaint is composed of conclusory allegations that are not grounded in fact or law, and are insufficient to support the relief requested. None of the conduct Plaintiff complains of is unfair, deceptive or misleading. As holder of the Note (Dkt. 8, Ex. 4, p. 9), Wells Fargo has had authority at all relevant times to proceed with foreclosure of the Property. Plaintiff has never satisfied her outstanding obligation owed to Wells Fargo, and she remains in default. No allegations in the Complaint or attachments thereto provide any basis to support a credible conclusion to the contrary.

Not only has Plaintiff not pleaded a cause of action for violation of the FDCPA adequately in this Complaint, further amendment would be futile as Plaintiff cannot meet the narrow exception set forth in 15 US §1692f(6). Therefore, the undersigned recommends Plaintiff's FDCPA claims be dismissed with prejudice and without leave to amend.

**3.    The Legal Tender Act of 1862 and/or Securities Act of 1933**

Plaintiff alleges broadly that Wells Fargo "refuses to follow the TENDER ACT [and] SECURITY ACT." Dkt. 3-1, p. 5.

To the extent Plaintiff is referring to the Securities Act of 1933 when referring to Wells Fargo's refusal to follow the "SECURITY ACT," the Court recommends this claim be dismissed with prejudice and without leave to amend as Plaintiff has no standing to bring a claim under the Securities Act of 1933, as she is not a party to any security or investment contract that is at issue in this lawsuit.[3]

---

[3] Section 11 of the Securities Act of 1933 provides a private cause of action for investors who purchase securities pursuant to a registration statement containing a material misstatement or omission. 15 U.S.C. § 77k(a). A Section 11 claim has two elements. First, the plaintiff must

REPORT AND RECOMMENDATION - 18

To the extent Plaintiff's claims are based upon alleged violations of the Legal Tender Act, it is recommended that they should also be dismissed with prejudice and without leave to amend.

The Legal Tender Act, which was passed in 1862 in response to a financial crisis sparked by the costs of war with the depletion of the Union's reserves of gold and silver, authorized the issuance of paper U.S. Notes as lawful money for all payments except interest on public debt and import duties. *From Gold to Greenbacks*, U.S. Capitol Visitor Center.[4] This has been interpreted to mean that a valid obligation is to be satisfied by a tender of actual payment according to its own terms. *See Bronson v. Rodes*, 74 U.S. (7 Wall.) 229, 245, 19 L.Ed. 141, 145 (1869) (mortgage debt could not be fully satisfied and discharged with payment in U.S. notes when the express contract required payment in gold and silver coin)

Here, Plaintiff simply alleges that Wells Fargo "refuses to follow the TENDER ACT [and] SECURITY ACT." Dkt. 3-1, p. 5. However, Plaintiff's Note is payable in United States dollars by cash, check or money order. Dkt. 8, Ex. 1, p.1. Plaintiff made payments on her Note in United States Dollars until November 1, 2018. *Id.*, Ex. 4. Therefore, as Wells Fargo correctly points out, Plaintiff's demand for satisfaction of her mortgage based upon the purported Credit Agreement, violates the very act she claims Wells Fargo refuses to follow. Her obligation has not been satisfied under the terms of the contract and Wells Fargo is entitled to refuse her Credit Agreement as legal tender to satisfy an obligation that, by its terms, is payable in U.S. Dollars by cash, check or money order. *Id.*, Ex. 1.

---

prove that the registration statement contained a misstatement or an omission. Second, the plaintiff must prove that the misstatement or omission was material. *In re Daou Sys.*, 411 F.3d 1006, 1027 (9th Cir.2005).

[4] https://www.visitthecapitol.gov/exhibitions/artifact/hr-240-legal-tender-act-february-25-1862 (last visited August 27, 2019).

REPORT AND RECOMMENDATION - 19

### 4.    Civil Rights Act and Title 12 Banking Laws

Plaintiff alleges, in conclusory fashion, that Wells Fargo has violated the Civil Rights Act, and Title 12 of the Banking Laws. Dkt. 1-3, p. 7. Plaintiff alleges no facts to support either claim. Instead, these claims, like all the claims asserted in her Complaint hinge on the sole allegation that Wells Fargo acted without authority to begin foreclosure upon the Property. As previously discussed, there are no legal or factual bases for this claim. Wells Fargo acted within its authority as holder of the note to begin foreclosure upon the Property due to Plaintiff's default (Dkt. 8, Exs. 4 and 6), Plaintiff's obligation remains in default (*id.*, Exs. 4 and 6), and Plaintiff's Credit Agreement is not legal tender and has no effect on Plaintiff's outstanding obligation to Wells Fargo.

Based on the foregoing, the undersigned recommends that Plaintiff's Civil Rights Act and Title 12 be dismissed with prejudice and without leave to amend.

### 5.    Plaintiff's Debt Verification Request Letter

Plaintiff also alleges that "[n]o validation of debt has been received by [her] after a Qualified Written Request, QWR…" Dkt. 1-3, p. 8, Ex. F.

The Real Estate Settlement Procedures Act ("RESPA") provides an action for damages against mortgage loan servicers who fail to respond to inquiries from borrowers regarding the servicing of their loans. If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a pattern or practice of noncompliance, statutory damages. 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2), 2605(f). A qualified written request ("QWR") is a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrowers; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or

1    provides sufficient detail to the servicer regarding other information sought by the borrower." 12

2    U.S.C. § 2605(e)(1)(B). A servicer must respond to a QWR if it requests or challenges

3    "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2).

4           A QWR need only ask for information relating to servicing and provide the relevant

5    names and account numbers. *Moon v. GMAC Mortg. Corp.*, No. C08-969Z, 2009 WL 3185596,

6    at *4-5 (W.D. Wash. Oct. 2, 2009). To successfully allege a violation of RESPA, a plaintiff

7    needs to allege facts sufficient to show that she suffered actual damages from the alleged failure

8    to respond. *Brutsky v. Capital One, N.A.*, No. C17-0491 RAJ, 2018 WL 513586, at *11 (W.D.

9    Wash. Jan. 23, 2018).

10          Here again, Plaintiff's claim is based on the sole notion that the Credit Agreement

11   satisfied her obligation to Wells Fargo. As has already been established, the Note and Deed of

12   Trust evidence Plaintiff's debt to Wells Fargo. Dkt. 8, Exs. 1 and 2. Even assuming Wells Fargo

13   did not respond to Plaintiff's QWR – a fact that it disputes – Plaintiff has not alleged any actual

14   damages related specifically to the purported "failure to respond" to her QWR or debt validation

15   request nor can she, as no trustee's sale has occurred. Dkt. 8, Exs. 6 and 7.

16          According, it is recommended that Plaintiff's claims related to a purported violation of

17   RESPA be dismissed with prejudice and without leave to amend.

## CONCLUSION

19          The basis for all of Plaintiff's claims is that she fully satisfied her obligation to Wells

20   Fargo through her execution of the Credit Agreement. Dkt. 1-3, pp. 1-6. However, the evidence

21   does not support any of Plaintiff's claims. Wells Fargo Bank, N.A. was at all relevant times, the

22   actual holder of the note (Dkt. 8, Ex. 4, pp. 2, 9) and beneficiary of the deed of trust. (*id.*, Exs. 2,

23   3, 4, 6). Wells Fargo's appointment of successor trustee, executed by Wells Fargo as beneficiary

1   and Lender as defined under Plaintiff's DOT (*id.*, Ex. 5) was valid. As no trustee's sale has

2   occurred (*id.*, Exs. 6 and 7), Plaintiff has no injury compensable under any of her theories, and

3   her obligation to Wells Fargo remains outstanding. Furthermore, Plaintiff cannot satisfy all

4   elements required to bring claims violation of RICO, the FCRA, or the FDCPA.

5           Dismissal of a pro se complaint without leave to amend is proper only if it is clear that

6   the deficiencies cannot be cured by amendment. *Terrell v. JPMorgan Chase Bank N.A.*, No.

7   C14-930 MJP, 2014 WL 5449729, at *1 (W.D. Wash. Oct. 23, 2014) (citing *Flowers v. First*

8   *Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002)). "A district court, however, does not abuse

9   its discretion in denying leave to amend where amendment would be futile." *Id.* (citation

10  omitted).

11          Whether to grant leave to amend "is within the sound discretion of the trial court" guided

12  by Fed. R. Civ. P. 15's underlying purpose of facilitating decisions on the merits. *Id.* (citing

13  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). In considering whether to permit

14  amendment, courts consider the following factors: (1) bad faith, (2) undue delay, (3) prejudice to

15  the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended

16  the complaint. *Id.* (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

17  Futility can, by itself, justify denial of a motion for leave to amend. *Id.* (citing *Bonin v. Calderon*,

18  59 F.3d 815 (9th Cir. 1995)).

19          The undersigned concludes that granting leave to amend is futile and would prejudice

20  Defendant. Plaintiff was advised of the deficiencies in her pleading and chose not to file a

21  response to Defendant's motion to dismiss. Plaintiff has no injury compensable under any of her

22  theories, her allegations are conclusory and lack sufficient factual and legal bases, and her

23  obligation to Wells Fargo remains outstanding. As there are no facts that can cure the

REPORT AND RECOMMENDATION - 22

deficiencies in her complaint, it is recommended that the dismissal be with prejudice, with no leave to amend.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **September 19, 2019.** The Clerk should note the matter for **September 23, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 29th day of August, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 23